Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Jessica Cook (SBN 339009)
Kimberly Macey (SBN 342019)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
jcook@girardsharp.com
kmacey@girardsharp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA HUGHLEY, and ROBIN JEFFERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTHLINE MEDIA, INC.,<br><br>Defendant. | Case No.<br><br>**JURY DEMAND**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>1. Video Privacy Protection Act, 18 U.S.C. § 2710;<br><br>2. Unfair Competition Law, Cal. Bus. and Prof. Code § 17200, *et seq.*;<br><br>3. Unjust Enrichment. |

Plaintiffs Sheila Hughley and Robin Jefferson, individually on behalf of themselves and all others similarly situated, allege as follows based on personal knowledge and on information and belief based on investigations of counsel.

## INTRODUCTION

1.      This is a consumer privacy class action against Healthline Media, Inc. ("Healthline") for violating the Video Privacy Protection Act ("VPPA" or "the Act") by disclosing its digital users' identities and video-viewing preferences to Meta Platforms, Inc. ("Meta") without proper consent. Meta owns the popular social media platforms Facebook and Instagram.

2.      The VPPA prohibits "video tape service providers," such as Healthline, from knowingly disclosing consumers' personally identifiable information ("PII"), including "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider," without the person having expressly given consent in a standalone consent form.

3.      Healthline, through its website, www.healthline.com, collects and shares users' personal information with Meta using a "Meta Pixel." A Meta Pixel is a snippet of programming code that tracks users as they navigate through a website, including what searches they performed and which items they have clicked on or viewed.

4.      The Meta Pixel sends information to Meta in a data packet containing PII, such as the users' IP address, name, email, or phone number. Meta then stores this data on its own servers.

5.      In this case, by its incorporation of Meta Pixel, Healthline shared PII with Meta, including at least the user's Facebook Profile ID and the title of the video that the user watched. A user's Facebook Profile ID is linked to their Facebook profile, which generally contains a wide range of demographic and other information about the user, including pictures, personal interests, work history, relationship status, and other details.

6.      Healthline discloses the user's Facebook Profile ID and viewing content to Meta together in a single, unencrypted transmission, in violation of the VPPA. Because the user's Facebook Profile ID uniquely identifies an individual's Facebook account, Meta—or any other person—can use the Facebook Profile ID to locate, access, and view the user's corresponding Facebook profile. In other

CLASS ACTION COMPLAINT
CASE NO.

words, Healthline's use of the Meta Pixel allows Meta to know what video content its users viewed on its website.

7.      Healthline users do not consent to such sharing through a standalone consent form, as required by the VPPA. As a result, Healthline violates the VPPA by disclosing this information to Meta.

8.      On behalf of a Class of similarly situated Healthline users, Plaintiffs seek relief through this action. Based on the facts set forth in this Complaint, Healthline violated the Video Privacy Protection Act ("VPPA"), California's Unfair Competition Law ("UCL"), and is liable for unjust enrichment.

## PARTIES

### A.      Plaintiffs

9.      Plaintiffs use their internet-connected devices and the web-browsing software ("browser") installed on those devices to visit and watch video content on Healthline's website, http://www.healthline.com, during the Class Period as defined herein.

10.     **Sheila Hughley.** Plaintiff Sheila Hughley is a citizen and resident of Olney, Maryland.

11.     Plaintiff Hughley subscribed to Healthline's email list and provided Healthline with her PII, including her name and email address when subscribing to its services.

12.     Plaintiff Hughley has maintained a Facebook account for about 10 years and spends approximately 2 to 3 hours a day on Facebook. Plaintiff Hughley's Facebook profile includes personal information about her including her name and other personal details.

13.     Plaintiff Hughley has maintained an Instagram account for about 3 years and spends approximately 1 hour a day on Instagram.

14.     Plaintiff Hughley visited the Healthline website using her web browser on numerous occasions to view video content.

15.     Plaintiff Hughley requests and watches videos on Healthline using the same browser that she uses to login to Facebook, including while she is logged in to Facebook. Plaintiff Hughley uses the same device to request and watch videos on Healthline that she uses for Facebook and Instagram.

16.     Healthline sent to Meta Plaintiff Hughley's PII, including her Facebook Profile ID, as well as the title of each video she viewed without obtaining consent through a standalone consent form.

CLASS ACTION COMPLAINT
CASE NO.

17.   Plaintiff Hughley has seen targeted advertisements on Facebook after watching related videos on the Healthline website.

18.   Plaintiff Hughley's PII and viewing history are private and confidential in nature and assets to which no third party has a presumptive right to access without a standalone consent form.

19.   **Robin Jefferson.** Plaintiff Robin Jefferson is a citizen and resident of Memphis, Tennessee.

20.   Plaintiff Jefferson subscribes to Healthline's email list and provided Healthline with her PII, including her name and email address when subscribing to its services.

21.   Plaintiff Jefferson has maintained a Facebook account for about 7 years and spends approximately 8 hours a day on Facebook. Plaintiff Jefferson's Facebook profile includes personal information about her including her name and other personal details.

22.   Plaintiff Jefferson has maintained an Instagram account for about 5 years and spends approximately 1 to 2 hours a day on Instagram.

23.   Plaintiff Jefferson visited the Healthline website using her web browser on numerous occasions to view video content.

24.   Plaintiff Jefferson requests and watches videos on Healthline using the same browser that she uses to login to Facebook, including while she is logged in to Facebook. Plaintiff Jefferson uses the same device to request and watch videos on Healthline that she uses for Facebook and Instagram.

25.   Healthline sent to Meta Plaintiff Jefferson's PII, including her Facebook Profile ID, as well as the title of each video she viewed without obtaining consent through a standalone consent form.

26.   Plaintiff Jefferson has seen targeted advertisements on Facebook after watching related videos on the Healthline website.

27.   Plaintiff Jefferson's PII and viewing history are private and confidential in nature and assets to which no third party has a presumptive right to access without a standalone consent form.

**B.   Defendant**

28.   Defendant Healthline is a Delaware corporation headquartered at 660 Third Street, San Francisco, CA 94107.

CLASS ACTION COMPLAINT
CASE NO.

**DIVISIONAL ASSIGNMENT**

29.     Pursuant to Civil L.R. 3-5(b), assignment to the San Francisco Division is appropriate under Civil L.R. 3-2(c) because Healthline is headquartered in San Francisco and a substantial part of the conduct at issue in this case occurred in San Francisco County.

**JURISDICTION, VENUE, AND CHOICE OF LAW**

30.     This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claims under the Video Privacy Protection Act, 18 U.S.C. § 2710.

31.     This Court also has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendant and at least one Class member are domiciled in different states.

32.     This Court has general personal jurisdiction over Healthline because its principal place of business is within this District. Additionally, Healthline is subject to specific jurisdiction in this District because it maintains sufficient minimum contacts within the State of California and a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in this state. Further, Healthline's Terms of Use state that, "[y]ou expressly agree that exclusive jurisdiction for any dispute with Healthline, or in any way relating to your use of the Services and/or the Content, resides in the courts of the State of California and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of the State of California in connection with any such dispute including any claim involving Healthline or its affiliates, subsidiaries, employees, contractors, officers, directors, telecommunication providers, and content providers."[1]

33.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

---

[1] https://www.healthline.com/terms-of-use (last visited September 2, 2022).

CLASS ACTION COMPLAINT
CASE NO.

34.     California law applies to the claims of all Plaintiffs and class members. Healthline's Terms of Use specify that, "[t]hese Terms of Use are governed by the internal substantive laws of the State of California, without respect to its conflict of laws principles."[2]

**FACTUAL ALLEGATIONS**

A.     **Healthline Disclosed Plaintiffs' and Class Members' Private Viewing Information to Meta Without Their Consent**

35.     Healthline owns and operates www.healthline.com, a website that provides articles and video content to users, including information on topics such as physical and mental health, healthcare, and health related products.

36.     Healthline provides prerecorded audiovisual content on its website, which Plaintiffs requested and viewed.

37.     While Plaintiffs and Class members were viewing the video content they requested on Healthline's website, Healthline transmitted this information to Meta, the multinational technology conglomerate that owns social media networks www.Facebook.com ("Facebook") and www.Instagram.com ("Instagram").

38.     Healthline's transmission of viewing information to Meta included the specific names of video content viewed by users, as well as the user's Facebook Profile ID, a string of numbers unique to each Facebook profile that personally identified the user.

39.     Anyone who possesses a Facebook Profile ID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile, which may contain a vast amount of personal information.

40.     While Meta can easily identify any individual on its Facebook platform with only their unique Facebook Profile ID, so too can any ordinary person who comes into possession of a Facebook Profile ID. Facebook admits as much on its website. Simply put, with only a Facebook Profile ID and the video content name and URL—all of which Defendant knowingly provides to Meta without

---

[2] https://www.healthline.com/terms-of-use (last visited September 2, 2022).

5

appropriate consent from its subscribers—any ordinary person could learn the identity of the Healthline subscriber and the specific video or media content they requested on Defendant's website.

41.     Facebook profiles may contain a Facebook user's name, gender, birthday, place of residence, career, educational history, a multitude of photos, and the content of a Facebook user's posts. Facebook profiles often reveal even more sensitive personal information—for instance, posted photos may disclose the identity of family members, and written posts may disclose religious preferences, political affiliations, personal interests and more.

42.     Healthline transmitted the video title and Facebook Profile ID information in a single, unencrypted transmission through a non-customer facing tracking tool called a "Meta Pixel."

43.     Meta Pixel is a snippet of programming code that, once installed on a webpage, sends to Meta data relating to the interactions a user takes on a particular website. Meta Pixel tracks users as they navigate through the website and logs which pages are visited, buttons are clicked, and, in this case, which videos a user requested and viewed on Healthline.

44.     Meta Pixel is an advertising and analytics tool that allows website owners to track visitor actions on their websites and send the corresponding information to Meta. Websites use Meta Pixel to collect analytical data about how users use its website and in turn, are able to target more specific ads to their users. Meta Pixel therefore allows companies to better target advertisements, focusing on visitors who are more likely to make a purchase. Thus, Meta Pixel is installed within the code of a website, such as Healthline, to increase the business's profits.

45.     Further demonstrating that Defendant knowingly placed the Pixel in its website code, Meta's own website states that "[t]he Meta Pixel and Facebook SDK are tools that businesses can *choose* to add to their website or app."[3] (Emphasis added).

46.     Meta offers its Pixel tool to websites across the internet. As of January 2022, more than 30 percent of popular websites have an embedded Meta Pixel.

47.     Healthline voluntarily chose to install the Meta Pixel within the code of its website.

48.     Meta benefits from websites like Healthline installing its Pixel. When Meta Pixel is

---

[3] https://www.facebook.com/help/331509497253087/ (last visited September 6, 2022).

CLASS ACTION COMPLAINT
CASE NO.

installed on a business's website, the business has a greater incentive to advertise through Facebook or other Meta-owned platforms, like Instagram. In addition, even if the business does not advertise with Meta, Meta Pixel assists Meta in building more fulsome profiles of its own users, which in turn allows Meta to profit from providing more targeted ads. This data can also be used to develop and refine Meta's machine learning algorithms, including those used to serve targeted advertisements to Facebook users, and others. Meta Pixel is installed on websites all over the internet and, accordingly, provides Meta with information about its users' preferences, other distinguishing traits, and web-browsing activities outside of Meta-owned platforms.

49.     Using the Meta Pixel likewise benefits Healthline by providing it with analytical data about its website and improving its ability to promote its content and services to its users. For instance, the data collected through the Meta Pixel is provided to Healthline in Meta's "Events Manager," which works with the Meta Pixel to provide website operators with a summary of user activity captured by the Meta Pixel. Meta also offers tools and analytics to reach certain individuals through Facebook ads. Healthline can use this information to create "custom audiences" through Meta to target the specific Facebook user, as well as other Facebook users who match members' of the audience's criteria. Healthline can also sort through the data collected by Meta Pixel to find specific types of users including, for instance, women over a certain age. Healthline also profits from selling parts of their website to display advertisers.

50.     Through use of Meta Pixel, Healthline – in the same transmission – discloses to Meta the full name of each video a user requested and watched, together with the user's Facebook Profile ID, thus linking users' browsing activities and preferences to their Facebook profiles. In other words, this single transmission connects a user's video viewing choices with their Facebook Profile.

51.     Healthline violates and invades the privacy rights of users with its practice of sending their Facebook Profile IDs, together with viewing content, to Meta.

52.     The VPPA requires that consent be obtained in a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710. Healthline's website does not provide a standalone consent form disclosing the information shared through the Meta

CLASS ACTION COMPLAINT
CASE NO.

Pixel and requesting user consent. Accordingly, no user provided Healthline with the level of consent required by the VPPA for disclosure of their viewing content and identities to Meta.

**B.    Plaintiff and Class Members Suffered Harm as a Result of Healthline's Privacy Violations.**

53.    Healthline shared Plaintiffs' sensitive data with Meta, including their video viewing histories linked to their Facebook Profile IDs, which Plaintiffs reasonably expected would be kept private.

54.    The personal information Healthline obtained from Plaintiffs and Class members constitutes valuable data in the digital advertising-related market for consumer information. Healthline's wrongful acquisition and use of their personal, private information deprived Plaintiffs and Class members of control over that information and prevented them from realizing its full value for themselves.

55.    Healthline's conduct has resulted in economic harm to Plaintiffs and Class members whose PII diminished in value when Healthline made this information available to Meta.

56.    The harms described above are aggravated by Healthline's continued retention and commercial use of Plaintiffs' and Class members' personal information, including their private video viewing histories.

## CLASS ALLEGATIONS

57.    Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of the following Class:

> **Nationwide Class**: All persons residing in the United States who requested and viewed video content on Healthline's website and were Facebook and/or Instagram users during the time Meta's Pixel was active on Healthline's website, and whose personally identifiable information and viewing content was disclosed to Meta through the Meta Pixel.

58.    The "Class Period" is from January 1, 2013 to the present.

59.    Excluded from the Class are (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) Defendant, Defendant's subsidiaries, affiliates, parents, successors, predecessors, and any entity in which Health or their parents have a controlling interest and

their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel.

60. **Numerosity**: The Class consists of at least hundreds of thousands of individuals, making joinder impractical.

61. **Commonality and Predominance**: Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include:

      a.      Whether Healthline's use of the Meta Pixel was without user consent or authorization;

      b.      Whether Healthline obtained and shared or caused to be obtained and shared Plaintiffs' and Class members' personal information through tracking using Meta Pixel, which Healthline installed on its webpages;

      c.      Whether other third parties obtained Plaintiffs' and Class members' personal information as a result of Healthline's conduct described herein;

      d.      Whether Healthline's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*;

      e.      Whether Healthline's conduct violates the Unfair Competition Law, Cal. Bus. and Prof. Code § 17200 *et seq.*;

      f.      Whether Healthline was unjustly enriched as a result of sharing users' information with Meta;

      g.      Whether Healthline's acquisition and transmission of Plaintiffs' and Class members' personal information resulted in harm; and

      h.      Whether Healthline should be enjoined from engaging in such conduct in the future.

62. **Typicality**: Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs, like all Class members, have been injured by Healthline's misconduct—disclosing users' PII and viewing content to Meta without a standalone consent form.

63. **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy protection cases. Plaintiffs do not have any interests antagonistic to those of the Class.

64. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Healthline to comply with federal law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Healthline's financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

65. **Injunctive relief**: Healthline has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## TOLLING OF THE STATUTES OF LIMITATIONS

66. All applicable statute(s) of limitations have been tolled by Healthline's knowing and active concealment and denial of the facts alleged herein.

67. As alleged herein, Meta Pixel is a snippet of code not apparent to consumers from the Healthline website. Plaintiffs therefore never knew of Healthline's misconduct.

68. Plaintiffs and Class members could not have reasonably discovered Healthline's practices of sharing their personal viewing content and PII with Meta until shortly before this class action litigation commenced.

69. Healthline was and remains under a continuing duty to disclose to Plaintiffs and Class members its practice of sharing personal viewing content and PII to Meta. As a result of the active concealment by Healthline, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CAUSE OF ACTION**

**Violation of the Electronic Communications Privacy Act
(Video Privacy Protection Act),
18 U.S.C. § 2710, *et seq.***

70.     Plaintiffs incorporate and reallege the above factual allegations by reference.

71.     The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

72.     As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." Healthline is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

73.     As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

74.     Healthline knowingly caused Plaintiffs' and Class members' personal viewing information, and Facebook Profile IDs, to be disclosed to Meta. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class member to Meta as an individual who viewed Healthline's content, including the specific video materials watched on Healthline's website.

75.     As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiffs are subscribers to Healthline's services which provide video content to users on its website. Thus, Plaintiffs are "consumers" under this definition.

76.     As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or

CLASS ACTION COMPLAINT
CASE NO.

is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. Healthline failed to obtain informed, written consent under this definition.

77.     Additionally, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(2)(B)(iii). The Act requires video tape service providers to "provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Healthline failed to provide an opportunity to opt out as required by the Act.

78.     Healthline was aware that the disclosures to Meta that were shared through the Pixel identified Plaintiffs and Class members. Healthline also knew that Plaintiffs' and Class members' personal viewing content was disclosed to Meta because Healthline programmed the Meta Pixel into its website code, knowing that Meta would receive video titles and the subscriber's Facebook Profile ID when a user watched a video.

79.     By disclosing Plaintiffs' and Class members' personal viewing content, Healthline violated Plaintiffs' and Class members' statutorily protected right to privacy in their video-watching habits. *See* 18 U.S.C. § 2710(c).

80.     As a result of the above violations, Healthline is liable to Plaintiffs and Class members for actual damages related to their loss of privacy in an amount to be determined at trial or, alternatively, for "liquidated damages in an amount of $2,500" per violation. 18 U.S.C. § 2710(c)(2)(A). Under the Act, Healthline is also liable for reasonable attorney's fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury and sufficient to prevent and deter the same or similar conduct by Healthline in the future.

## SECOND CAUSE OF ACTION

### Violation of California's Unfair Competition Law (the "UCL")
### Cal. Bus. and Prof. Code §§ 17200, *et seq.*

81.     Plaintiffs incorporate and reallege the above factual allegations by reference.

82.     The UCL proscribes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

**Unlawful**

83.    A business practice is "unlawful" under the UCL if it violates any other law or regulation.

84.    Healthline's business acts and practices are unlawful because they violate the Video Privacy Protection Act, as described above. Healthline is therefore in violation of the "unlawful" prong of the UCL.

**Unfair**

85.    Healthline's conduct is also unfair in violation of the UCL because it violates California and the nation's clear public policy in favor of consumer privacy. *See* S. Rep. No. 100-500 at 7-8 (1988) ("…the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems…create privacy interests that directly affect the ability of people to express their opinions, to join in association with others, and to enjoy the freedom and independence that the Constitution was established to safeguard.")

86.    Healthline's unfair business practices include disclosing Plaintiffs' and Class members' Facebook Profile IDs and viewing content to Meta without authorization or consent, causing harm to Plaintiffs and Class members.

87.    Healthline actually and proximately caused harm to Plaintiffs and Class members in that they suffered loss of privacy as a result of Healthline's business practices.

88.    The gravity of harm resulting from Healthline's unfair conduct outweighs any potential utility. The disclosure of Plaintiffs' and Class members' personal information implicates significant privacy concerns and any potential utility from these disclosures (i.e., increased Healthline revenue due to more targeted advertising) is outweighed by the harm caused to Plaintiffs and Class members.

89.    Healthline is therefore in violation of the "unfair" prong of the UCL.

90.    Plaintiffs and Class members accordingly seek appropriate relief, including (1) restitution under the UCL; and (2) such orders or judgments as may be necessary to enjoin Healthline from continuing its unfair and unlawful practices. There is no other adequate remedy at law that would provide redress to Plaintiffs and the Class or to ensure that Healthline will not use the same data practices in the future. Plaintiffs also respectfully seek reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure section 1021.5.

CLASS ACTION COMPLAINT
CASE NO.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**

91.    Plaintiffs incorporate and reallege the above factual allegations by reference.

92.    Healthline acted wrongfully by sharing users' Facebook Profile IDs and viewing content to Meta without users' consent through a standalone consent form, as required by the VPPA.

93.    Healthline's practice of sharing users' personal information and viewing content with Meta without proper consent, along with its failure to disclose this practice, caused Healthline to profit from advertisement revenue it would otherwise not have received.

94.    Healthline's retention of these ill-gotten gains is unjust and inequitable.

95.    Plaintiffs, on behalf of themselves and the Class, accordingly seek restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment, including reasonable attorneys' fees and costs. There is no adequate remedy at law that would provide redress to Plaintiffs and the Class or ensure that Healthline will not deploy the same data practices in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court:

A.    Certify this case as a class action, and appoint Plaintiffs as Class Representatives and the undersigned attorneys as Class Counsel;

B.    Enter judgment in favor of Plaintiffs and the Class;

C.    Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D.    Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiffs and Class members are entitled;

E.    Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

14

CLASS ACTION COMPLAINT
CASE NO.

F.    Award Plaintiffs and Class members pre- and post-judgment interest as provided by law;

G.    Enter such other orders as may be necessary to restore to Plaintiffs and Class members any money and property acquired by Defendant through its wrongful conduct;

H.    Award Plaintiffs and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

I.    Award such other and further relief as the Court deems necessary and appropriate.

### <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues triable as of right.

Dated: September 6, 2022                    Respectfully submitted,


By: */s/ Simon S. Grille*
Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Jessica Cook (SBN 339009)
Kimberly Macey (SBN 342019)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
jcook@girardsharp.com
kmacey@girardsharp.com

*Attorneys for Plaintiffs*