UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN JEFFERSON, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHLINE MEDIA, INC.,<br><br>Defendant. | Case No. 3:22-cv-05059-JD<br><br>**ORDER RE MOTION TO DISMISS** |

Plaintiff Robin Jefferson has sued defendant Healthline Media, Inc. (Healthline) on behalf of herself and a putative nationwide class, alleging that Healthline unlawfully disclosed her personal "video viewing" history in violation of the Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710.[1] Dkt. No. 1 ¶¶ 53, 70-80. Jefferson also brings claims against Healthline for violation of California's Unfair Competition Law (UCL), § 17200 *et seq.*, and unjust enrichment. *See id.* ¶¶ 81-95. Healthline asks to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 16. The complaint is dismissed with leave to amend.

**BACKGROUND**

Healthline "owns and operates www.healthline.com, a website that provides articles and video content to users, including information on topics such as physical and mental health, healthcare, and health related products." Dkt. No. 1 ¶ 35. Jefferson is an active Facebook and Instagram user who watches videos on Healthline's website, "using the same browser that she uses to login to Facebook, including while she is logged in to Facebook." *Id.* ¶ 24. Jefferson says that

---

[1] Jefferson was originally joined by plaintiff Sheila Hughley. Dkt. No. 1 ¶ 10. Hughley voluntarily dismissed her claims against Healthline, Dkt. No. 19, and the caption has been amended accordingly.

she "subscribes to Healthline's email list and provided Healthline with her PII [personally identifiable information], including her name and email address when subscribing to its services." *Id.* ¶ 20.

The complaint alleges that Healthline "collects and shares users' personal information with Meta [Platforms, Inc.] using a 'Meta Pixel.'" *Id.* ¶ 3. Meta owns the social media platforms Facebook and Instagram. *See id.* ¶ 1. The Meta Pixel "is a snippet of programming code that, once installed on a webpage, sends to Meta data relating to the interactions a user takes on a particular website. [It] tracks users as they navigate through the website and logs which pages are visited, buttons are clicked, and, in this case, which videos a user requested and viewed on Healthline." *Id.* ¶ 43. Jefferson claims that Healthline, through its website's incorporation of the Meta Pixel, sent Meta her PII, "as well as the title of each video she viewed without obtaining consent through a standalone consent form." *Id.* ¶ 25. She says that she received "targeted advertisements on Facebook after watching related videos on the Healthline website." *Id.* ¶ 26. Using the Meta Pixel "benefits Healthline by providing it with analytical data about its website and improving its ability to promote its content and services to its users." *Id.* ¶ 49.

## LEGAL STANDARDS

The Court has discussed in other cases the standards governing a Rule 12(b)(6) motion to dismiss, and the discussion is incorporated here. *See McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018); *In re Wells Fargo Forbearance Litig.*, No. 20-cv-06009-JD, 2023 WL 3237501, at *1 (N.D. Cal. May 2, 2023). In pertinent part, Rule 8(a)(2) requires that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet that rule and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**DISCUSSION**

Enacted in 1988, the VPPA "prohibits a 'video tape service provider' from knowingly disclosing 'personally identifiable information' about one of its consumers 'to any person,'" *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (emphasis omitted) (quoting 18 U.S.C. § 2710(b)), and confers a private right of action to persons aggrieved by a violation of its provisions, *see Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1047 (9th Cir. 2015) (citing 18 U.S.C. § 2710(c)). As relevant here, a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). And a "consumer," within the meaning of the VPPA, is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1). To state a claim for unlawful disclosure under the VPPA, "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett*, 795 F.3d at 1066.

Healthline requests dismissal of Jefferson's VPPA claim on the ground that she does not qualify as a "consumer." *See* Dkt. No. 16 at 7. Healthline also contends that the complaint does not plausibly allege (i) that Healthline is a video tape service provider or (ii) that it knowingly disclosed Jefferson's PII to Meta. *See id.* at 4, 10, 12. Since the briefing on the motion to dismiss was completed, the parties have filed a steady stream of recent decisions from other district courts,[2] reflecting that these issues -- and the viability of extending VPPA liability to website owners that provide video content and use the Meta Pixel -- remain unsettled. *Compare, e.g.*, *Carter v. Scripps Networks, LLC*, No. 22-cv-02031 (PKC), 2023 WL 3061858, at *6-7 (S.D.N.Y. Apr. 24, 2023) (dismissing similar VPPA claim) *with Harris v. Pub. Broad. Serv.*, No. 1:22-cv-02456-MLB, 2023 WL 2583118, at *7 (N.D. Ga. Mar. 20, 2023) (denying motion to dismiss similar VPPA claim).

---

[2] *See* Dkt. Nos. 28, 34, 36, 37. Going forward, the parties do not need to advise the Court of new decisions.

3

An argument can be made that the use of a Meta Pixel may give rise to a privacy violation as contemplated by the VPPA. Jefferson's complaint needs to allege additional facts to make out a plausible VPPA claim, mainly because she has not adequately alleged that she is a "consumer" within the meaning of the statute. Jefferson does not say that she is a "renter" or "purchaser" of Healthline's goods or services. *See generally* Dkt. No. 24. Consequently, Jefferson's path to stating a VPPA claim is to plausibly allege that she is a "subscriber," a term which the VPPA does not expressly define. Healthline says that there must be "a connection between a would-be subscriber and the defendant's provision of video content." Dkt. No. 16 at 7. Jefferson suggests that "[b]eing a subscriber only requires 'demonstrat[ing] an ongoing commitment or relationship with' Healthline." Dkt. No. 24 at 7 (quoting *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 (11th Cir. 2017)).

This is a question of statutory interpretation, and as in all such cases, "[o]ur analysis begins and ends with the text." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014); *see also Michigan v. DeVos*, 481 F. Supp. 3d 984, 991 (N.D. Cal. 2020). "The Court gives Congress's words their ordinary and everyday meaning, and may consult dictionary definitions to ensure a plain interpretation." *Nat. Grocers v. Vilsack*, --- F. Supp. 3d ----, 2022 WL 4227248, at *9 (N.D. Cal. Sept. 13, 2022) (citing *City of Los Angeles v. Barr*, 941 F.3d 931, 940 (9th Cir. 2019)). The "inquiry must cease if the statutory language is unambiguous" and "the statutory scheme is coherent and consistent." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 412 (2011) (internal quotations and citation omitted). "When construing a statute, a virtuoso feat of analysis is neither required nor particularly useful." *DeVos*, 481 F. Supp. 3d at 991. The Court bears "the conventional judicial duty to give faithful meaning to the language Congress adopted in the light of the evident legislative purpose in enacting the law in question." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 298 (2010) (internal quotations and citation omitted); *see also Ctr. for Biological Diversity v. Raimondo*, --- F. Supp. 3d ----, 2023 WL 2530993, at *4 (N.D. Cal. Mar. 14, 2023).

The parties agree that "a VPPA subscription does not require payments." Dkt. No. 16 at 7; *see also* Dkt. No. 24 at 7. That squares with the statutory text and the decisions of the two circuits

4

to have considered the issue. *See Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015); *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487-88 (1st Cir. 2016). "Although most definitions of 'subscribe' or 'subscriber' involve payment of some sort, not all do." *Ellis*, 803 F.3d at 1256. Congress could have easily specified that "consumer" meant "any renter, purchaser, or paid subscriber," but chose not to qualify "subscriber" in that fashion. *See, e.g.*, 44 U.S.C. § 910(c) ("The Congressional Record shall be entitled to be mailed at the same rates of postage at which any newspaper or other periodical publication, with a legitimate list of paid subscribers, is entitled to be mailed."). In addition, "if the term 'subscriber' required some sort of monetary payment, it would be rendered superfluous by the two terms preceding it." *Yershov*, 820 F.3d at 487.

While the VPPA broadly protects paid and unpaid subscribers, not everything that might be labeled a "subscription" automatically triggers the statute's protections. In the days when the VPPA was enacted, to "subscribe," in ordinary usage, meant "to enter one's name for a publication or service" or "to receive a periodical or service regularly on order." Webster's Ninth New Collegiate Dictionary 1175-76 (1984); *see also New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) ("It's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time Congress enacted the statute.") (cleaned up). The VPPA limits its scope to subscribers of "goods or services" from a video tape service provider. 18 U.S.C. § 2710(a)(1). Consequently, a VPPA subscriber is not just someone who provides her name and address to a website, for some undisclosed purpose or benefit.

Against this backdrop, Jefferson has not plausibly alleged that she is a subscriber of Healthline's goods or services. Jefferson says that she gave Healthline her name and email address to "subscribe[] to Healthline's email list." Dkt. No. 1 ¶ 20. But no information is provided about this list. The Court cannot discern or infer from the complaint whether Jefferson receives any kind of publication, let alone any good or service, in exchange for signing up for Healthline's email list.

Consequently, the complaint, as it stands, does not plausibly allege a VPPA claim. Dismissal is also warranted for the UCL and unjust enrichment claims, which Jefferson effectively tethers to her VPPA claim. *See* Dkt. No. 24 at 13-15.

**CONCLUSION**

The complaint is dismissed with leave to amend. Jefferson may file an amended complaint consistent with this order by June 9, 2023. No new claims or parties may be added without the Court's prior approval. A failure to meet this deadline will result in dismissal with prejudice under Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: May 24, 2023

JAMES DONATO
United States District Judge