UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRIA HEATHER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTHLINE MEDIA, INC.,<br><br>Defendant. | Case No. 3:22-cv-05059-JD<br><br>**SECOND ORDER RE MOTION TO DISMISS AND DISCOVERY STAY** |

Plaintiffs Alexandria Heather and Kelsey Nelson have sued defendant Healthline Media, Inc. (Healthline), on behalf of themselves and a putative nationwide class, alleging that Healthline disclosed their personal video viewing histories in violation of the Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710. This is the second round of pleadings motions with respect to the sufficiency of the allegations in the complaint. The Court dismissed the prior complaint for not plausibly alleging that plaintiffs were "subscribers" within the scope of the VPPA. *See* Dkt. No. 38.

Healthline asks to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 52. The parties' familiarity with the record is assumed, and the amended complaint is dismissed.

**DISCUSSION**

As the Court stated in the dismissal order, the use of a Meta Pixel to surreptitiously collect information about content viewed on Healthline's site may give rise to a privacy action under the VPPA. Dkt. No. 38 at 4. The predicate for that is satisfying the elements of a VPPA claim, and plaintiffs previously stumbled on plausibly alleging that they were subscribers. Dkt. No. 38 at 5. Plaintiffs were specifically directed to identify the "good or service" they received. *Id.*

Plaintiffs sought to correct this shortfall by alleging in the amended complaint that they

subscribed to an email newsletter published in connection with Healthline's site. *See, e.g.*, Dkt. No. 42 ¶¶ 39-47. The newsletters are said to provide "health and wellness-related content," including "links to video content hosted on Healthline's website." *Id.* ¶ 12. Plaintiffs say they clicked the links to Healthline's website and watched some linked videos. *Id.* ¶¶ 17, 28.

Plaintiffs contend that, because they signed up for regular delivery of Healthline's newsletters by providing their email addresses to it, they are "subscribers" under the VPPA. *Id.* Some courts in this District have accepted this reasoning. *See, e.g.*, *Jackson v. Fandom, Inc.*, No. 4:22-CV-04423-JST, 2023 WL 4670285, at *3 (N.D. Cal. July 20, 2023); *In re Hulu Priv. Litig.*, No. 3:11-CV-03764-LB, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012).

But the subscriber inquiry does not stop there. To qualify as subscribers, plaintiffs must also demonstrate that they signed up for "goods or services" within the meaning of the VPPA. This is the main dispute between the parties with respect to dismissal of the amended complaint. Plaintiffs say that the newsletters, which occasionally feature links to videos on Healthline's website, is a video-related service for purposes of the VPPA. Dkt. No. 57 at 6. Healthline says that a newsletter does not qualify as a video-related service. Dkt. No. 52 at 6-8. This question has resulted in different outcomes in other courts. *See, e.g.*, *Carter v. Scripps Networks, LLC*, No. 22-cv-02031 (PKC), 2023 WL 3061858, at *6-7 (S.D.N.Y. Apr. 24, 2023) (dismissing VPPA claim on similar grounds) *with Harris v. Pub. Broad. Serv.*, 2023 WL 2583118, at *2 (N.D. Ga. Mar. 20, 2023) (denying dismissal of VPPA claim).

The scope of the "goods or services" received by a subscriber is a question of statutory interpretation, and, as such, "[o]ur analysis begins and ends with the text." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). The "inquiry must cease if the statutory language is unambiguous" and "the statutory scheme is coherent and consistent." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 412 (2011) (internal quotations omitted). It is also a "fundamental canon of statutory construction" to define words in reference to "context" and "the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000) (internal quotations omitted).

Section 2710 of the VPPA defines a "video tape service provider" as a person "engaged in

2

the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). A consumer is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The parties' essential disagreement is whether the "goods or services" that a consumer receives are the same services a defendant provides -- in effect, whether "services" under Section 2710(a)(1) has the same meaning as "services" provided by a "video tape service provider," under Section 2710(a)(4).

The principles of statutory construction require defining "services" consistently within the statutory context. "A word is interpreted in the context of the company it keeps," and it would be "illogical, or very poor legislative drafting," to use the same word, "service," in close proximity, while giving it different meanings. *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1233 (9th Cir. 2022). Consequently, the "services" a subscriber receives are presumptively the same "services" that would render Healthline a "video tape service provider."

These circumstances indicate that plaintiffs still have not adequately alleged that they are subscribers under the VPPA. A video tape service provider is in the "business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." A newsletter of the sort in question here, which is comprised primarily of text and occasional external hyperlinks to video content, does not fit readily within that definition. The amended complaint does not allege that any videos were presented in the newsletters themselves. It also does not allege that plaintiffs received enhanced access to the videos, which were equally available to all Healthline's visitors. At most, the amended complaint established that plaintiffs subscribed to a predominantly written, not video, good or service, which is outside the purview of the VPPA.

Consequently, the VPPA claim is dismissed again. Dismissal is also warranted for the unjust enrichment claim. Although a standalone cause of action for unjust enrichment may be pled in some circumstances, *see Sinatro v. Welch Foods Inc.*, No. 3:22-CV-07028-JD, 2023 WL 3590681 (N.D. Cal. May 22, 2023), plaintiffs expressly tethered their unjust enrichment claim to their VPPA claim. *See* Dkt. No. 42 ¶ 95. The unjust enrichment claim rises and falls with the VPPA claim.

3

Plaintiffs may file a second amended complaint consistent with this order by January 8, 2024.  No new claims or parties may be added without leave of the Court.  A failure to meet this deadline will result in dismissal of the case under Federal Rule of Civil Procedure 41(b).  All discovery is stayed pending further order, and the discovery letters are terminated without prejudice to renewal as warranted.

**IT IS SO ORDERED.**

Dated: December 19, 2023

JAMES DONATO
United States District Judge